J-A03004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| B.C.S. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| T.S.S. | |
| Appellee | No. 1491 MDA 2014 |

Appeal from the Order Entered August 28, 2014
In the Court of Common Pleas of Berks County
Civil Division at No(s): 9-4039

BEFORE:  MUNDY, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                    **FILED APRIL 21, 2015**

Appellant, B.C.S. (Mother), appeals from the August 28, 2014 custody order which modified the June 18, 2010 existing custody order with respect to her sons, K.M.S. and A.B.S. (the Children),[1] born during her marriage to, Appellee, T.S.S. (Father).  After careful review, we affirm.

We summarize the relevant factual and procedural history of this case as follows.  Mother initiated the underlying custody action in May 2009, along with a divorce action.  Upon the parties' separation, Mother remained in the marital home that was located in the Wilson School District, and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] K.M.S. was born in December 1999 and A.B.S. was born in August 2004.

Father moved to Exeter Township, in Berks County, which was approximately fifteen to twenty minutes from the marital home. Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 2. Pursuant to an agreed-upon custody order dated June 18, 2010 (existing custody order), the parties exercised shared legal custody, Mother exercised primary physical custody, and Father exercised partial physical custody on alternating weekends and every Tuesday and Thursday evening.

On August 24, 2011, Father filed a petition for special relief alleging that he and Mother were unable to agree upon the Children's school enrollment for the 2011-2012 school year, at which time K.M.S. was entering fourth grade, and A.B.S. was entering first grade. Petition for Special Relief, 8/24/11, at ¶¶ 5, 7, 9. Father asserted that K.M.S. had attended the Montessori Country Day School for second and third grade, and A.B.S. attended the Montessori Country Day School for kindergarten. *Id.* In addition, Father alleged that Mother had refused to have the Children immunized due to "strong ethical objections." *Id.* at ¶ 18. Father sought to have the Children enrolled in the Wilson School District and to have them vaccinated "without [Mother's] permission and over her objection." *Id.* at ¶¶ 19-21.

Following an evidentiary hearing, by order dated October 18, 2011, the trial court granted Father the discretion to enroll the Children in the Wilson School District or in the Montessori Country Day School and

authorized him to have the Children immunized. Father elected to enroll the Children in the Wilson School District. Following Mother's timely filing of a notice of appeal from the October 18, 2011 order, this Court affirmed the order. *See B.C.S. v. T.S.S.*, 48 A.3d 490 (Pa. Super. 2012) (unpublished memorandum).

On July 15, 2013, Father filed a petition in the trial court for special relief alleging that Mother had purchased a home in Mohnton, in Berks County, and that she intended to move out of the Wilson School District.[2] Petition for Special Relief, 7/15/13, at ¶ 9. Father asserted that he established a temporary residence in the Wilson School District, and that he intended to relocate permanently to the Wilson School District so the Children may continue in the same school district. *Id.* at ¶¶ 17-18.[3] In addition, Father alleged, in part, that Mother has objected to any pediatrician for the Children "that advocates for vaccines and … instead tak[es] the children to Urgent Cares without Father's consent." *Id.* at ¶ 22. As such, in his petition, Father requested sole legal and primary physical custody of the Children.

_____

[2] Mother's home in Mohnton, in Berks County, is located in the Governor Mifflin School District. Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 8.

[3] In his petition for special relief filed on July 15, 2013, Father included two separate paragraphs identified as number 18. Here, we reference both paragraphs identified as number 18.

Shortly thereafter, on July 24, 2013, Mother filed a petition to modify the existing custody order. Mother requested that K.M.S. reside with Father, that A.B.S. reside with her, and that A.B.S. be enrolled in private school. By temporary order dated July 24, 2013, the trial court granted Father primary physical custody of K.M.S., and Mother primary physical custody of A.B.S. In addition, the trial court granted the parties alternate physical custody of the Children every weekend, with the intent of the order being that the Children remain together on the weekends. Further, the trial court directed that the Children continue to attend the Wilson School District, and that Mother not relocate her residence without written consent of Father or further order of court.[4] Finally, the trial court permitted Father to select unilaterally a pediatrician or any other medical provider needed for the Children.

The custody hearing occurred on July 28 and 29, and August 1, 2014. By the time of the hearing, Father and Father's wife, K.W. (Stepmother) had relocated to the Wilson School District in the same neighborhood where the former marital home was located, which was a driving distance of fifteen to twenty minutes from Mother's new home in Mohnton, in Berks County.

---

[4] By agreed-upon order dated January 22, 2014, the trial court permitted Mother to relocate to Mohnton, in Berks County. Further, the trial court directed that the temporary July 24, 2013 order remain in full force and effect with respect to the provisions regarding physical custody of the Children and the Children continuing to attend the Wilson School District.

Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 9, 22. The parties agreed that Father would exercise primary physical custody of K.M.S., and that K.M.S. would therefore continue attending school in the Wilson School District. With respect to the physical custody of A.B.S., Father requested equally shared physical custody, and that he continue to attend school in the Wilson School District. However, Mother requested primary physical custody of A.B.S., and that he be enrolled in either the Montessori Country Day School or in the Governor Mifflin School District, where her new home is located. In addition, the parties continued to dispute the selection of a pediatrician.

Father testified on his own behalf and presented the testimony of Peter H. Thomas, Ph.D., a court-appointed psychologist who performed two custody evaluations in this case, in October of 2009, and September and October of 2013; Lee Ann Grisolano, Ph.D., a school psychologist hired by Father to determine which school best suited the needs of A.B.S.; and Stepmother. Likewise, Mother testified on her own behalf and presented the testimony of Jeffrey Peter Bomze, M.D., a pediatrician hired by her to determine which school best suited the needs of A.B.S.; F.G., the Children's maternal grandfather; and D.H., Mother's paramour. In addition, the trial court interviewed the Children *in camera* in the presence of the parties' counsel.

Significantly, with respect to A.B.S., Dr. Thomas testified that the child is "very anxious," and that there are "dysfunctional elements" in his relationship with Mother that involve "enmeshment," or a lack of adequate separation in his relationship with Mother. N.T., 7/28/14, at 54, 67-68. Further, it is undisputed that A.B.S. has a learning disability relating to reading and writing, and, beginning in second grade and continuing through the subject proceedings, the Wilson School District generated an individualized education plan (IEP) for him. *Id.* at 128-129. Dr. Grisolano, who met with A.B.S.'s homeroom teacher, learning support teacher, and school counselor, testified that A.B.S. "has progressed very well since he has been in [the] Wilson [School District], academically, socially, and behaviorally." *Id.* at 139.

By order dated August 12, 2014, and entered on August 28, 2014, the trial court granted Father sole legal custody of the Children. In addition, the trial court granted Father primary physical custody of K.M.S. during the school year, and Mother partial physical custody on alternating weekends and one evening each week until 8:30 p.m. With respect to A.B.S., the trial court granted Mother and Father equally shared physical custody. From September 1, 2014 to January 1, 2015, the trial court directed that the parties follow a two-week rotating schedule regarding the custody of A.B.S., as follows.

> Week 1: Father shall have custody Monday and
> Tuesday and Mother shall have custody Wednesday,

> Thursday and Friday and Father shall have custody Friday evening until Sunday at 7:30 p.m.
>
> Week 2: Mother shall have custody Monday and Tuesday, Father shall have custody Wednesday, Thursday and Friday and Mother shall have custody Friday evening until Sunday at 7:30 p.m.

Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 26-27, ¶ 3(a)(i)-(ii). The trial court directed that the parties exchange custody of A.B.S. every Sunday at 7:30 p.m., starting on January 1, 2015. The trial court directed that "this schedule shall coordinate in a way [that] the Children are always together on weekends." *Id.* at 27, ¶ 3(b). During the summer, the trial court directed that "the parties shall exchange custody of the Children together, every 7 days." *Id.* at 27, ¶ 4.

On September 5, 2014, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). The trial court subsequently filed a statement in lieu of its Rule 1925(a) opinion on September 30, 2014, wherein the trial court adopted its Findings of Fact, Conclusions of Law, Discussion and Final Custody Order dated August 12, 2014, and filed August 28, 2014.

On appeal, Mother presents the following questions for our review.

1. Did the trial court abuse its discretion by

> A. Failing to articulate a principled explanation for rejecting the expert testimony of Dr. Robert Gordon and
>
> B. Relying upon Dr. Peter Thomas' custody evaluation which was prepared with

- 7 -

incompatible methodologies and uncorrelated data?

2. Did the trial court abuse its discretion by awarding sole legal custody of the Children to Father?

3. Did the trial court abuse its discretion by ordering shared physical custody of the younger child?

4. Did the trial court abuse its discretion by assessing Mother's current parenting skills on the basis of her prior behavior?

5. Did the trial court abuse its discretion by disregarding the wishes of the younger child to remain with Mother?

6. Did the trial court abuse its discretion by

A. Failing to articulate a principled explanation for preferring the education recommendation of Dr. Grisolano to the one of Dr. Bomze and

B. Finding that the education of the younger child would be disrupted by a change in schools?

Mother's Brief at 6.[5]

The scope and standard of review in custody matters is as follows.

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to

_____

[5] We have reordered Mother's questions for ease of disposition.

determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (*quoting* *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)).  Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr.*, *supra* at 1237 (internal citations omitted).  The test is whether the evidence of record supports the trial court's conclusions.  *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (parallel citations omitted).

The primary concern in any custody case is the best interests of the child.  "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing."  *Saintz v. Rinker*, 902

A.2d 509, 512 (Pa. Super. 2006), *citing* **Arnold v. Arnold**, 847 A.2d 674, 677 (Pa. Super. 2004).

Relevant to this custody case are the factors set forth in Section 5328(a) of the Child Custody Act (the Act), which provides as follows.

**§ 5328.  Factors to consider when awarding custody.**

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[6]

This Court has stated that, "**[a]ll** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original).

> Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, 70 A.3d 808 (Pa. 2013)….
>
> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, 68 A.3d 909 (Pa. 2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). **Id.**

**A.V.**, **supra** at 822-823.

Instantly, the trial court authored a 25-page opinion that explained the reasons for its decision and thoroughly addressed the Section 5328(a)

_____

[6] The Act was amended, effective January 1, 2014, to include the additional factor at Section 5328(a)(2.1).

- 12 -

custody factors. We set forth the trial court's findings with respect to the custody factors most relevant to its decision, which, upon careful review, the record evidence supports.

With respect to Section 5328(a)(4), *i.e.*, the need for stability and continuity in the child's education, family life and community life, the trial court found, in part, the following.

> The importance of stability and continuity in all aspect[s] of the Children's lives is a major concern to the [trial c]ourt in this case, especially pertaining to [A.B.S.] in light of his special needs. Dr. Thomas found it disturbing that Mother chose to relocate to the Governor Mifflin School District despite [K.M.S.]'s strong opposition to changing schools and in light of [A.B.S.]'s educational challenges. Dr. Gris[o]lano clearly opined that changing [A.B.S.'s] school will not be in his best interest. Father, on the other hand, recognized the importance of allowing the Children to remain in their … neighborhood where [they] have developed a circle of friends and where they can continue to attend the local public school within walking distance of their home. … Both Dr. Thomas and Dr. Grisolano agree that having [t]he Children remain in Wilson School District in the neighborhood in which they have always known is in their best interest and [the trial court] agree[s]. Granting Father shared physical custody of [A.B.S.] on a 50-50 basis will lawfully permit [A.B.S.] to continue to attend Green Valley Elementary School despite the fact that Mother now lives in another school district….

Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 19.

With respect to Section 5328(a)(9), *i.e.*, which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child

- 13 -

adequate for the child's emotional needs, the trial court found, in part, the following.

> Mother's relationship with the Children is an important consideration. Dr. Thomas described, in detail, the deterioration of Mother's relationship with [K.M.S.] which prompted [K.M.S.] to live primarily with Father. On the other hand, Dr. Thomas finds Mother's overly-close bond with [A.B.S.] to be problematic as well. He stated that Mother "lacks appropriate boundaries in her relationship with [A.B.S.]." Dr. Thomas discussed in great detail Mother's approach to parenting which has resulted in [A.B.S.]'s unhealthy dependence on Mother which he describes as "dysfunctional enmeshment." For example [A.B.S.] was breastfeeding until [ ] the age of five, he was in diapers until [ ] the age of five, and he continues to sleep in Mother's bedroom 50% of the time. Dr. Thomas says that Mother's dysfunctional, enmeshed relationship with [A.B.S.] can be counterbalanced by allowing [A.B.S.] to spend more time with Father. He stated that [A.B.S.] needs time away from Mother for his emotional development and personality structure….

Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 21.

Finally, with respect to Section 5328(a)(10), *i.e.*, which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the trial court found, in part, as follows.

> As we expressed in our 2011 Findings of Fact, Discussion and Order addressing the immunization dispute, we firmly believe that Mother at times exercises poor judgment in regard to her unorthodox beliefs concerning medical care for the Children. We are disturbed that Mother told Dr. Thomas that she still does not understand the reason for our ruling on the immunization dispute and we are disturbed that

she engaged in disruptive behavior at the Children's pediatricians' office after our order was issued, attempting to thwart our ruling permitting Father to have the Children vaccinated. We, therefore, understand why Dr. Thomas testified that he has great concern for [M]other's thought process in these types of situations. As a result of Mother's unreasonable and dangerous refusal to permit the Children to be immunized in the face of overwhelming medical evidence documenting the safety and necessity of vaccinations, and in light of Mother's obstructionist behavior and unreasonable refusal to allow the Children to be seen by mainstream pediatricians and in consideration of Dr. Thomas' concerns, we find Father's request for sole legal custody to be valid and necessary.

Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 22. As the trial court's opinion indicates, the record evidence fully supports these findings. As a result, we turn to the merits of Mother's issues on appeal.

In her first issue, Mother argues the trial court abused its discretion in its determinations regarding the credibility and weight of the evidence applied to Dr. Thomas' conclusions and recommendations as a result of his custody evaluation. Mother's Brief at 12, 18. Specifically, Mother argues the trial court abused its discretion in failing to accept the critique of the custody evaluation offered by her expert, Dr. Gordon. *Id.* at 14.

In sum, Mother accurately states in her brief that Dr. Gordon testified, in part, that Dr. Thomas erred in "using one psychologist test (MMPI-2-RF) for the parents but using a different one (MMPI-2) for Father's current wife and Mother's significant other. These tests employ different norms and

- 15 -

different clinical scales which preclude consistent comparisons of the subjects' scores." *Id.* at 13. Nevertheless, Dr. Thomas thoroughly responded to Dr. Gordon's critique by testifying, in part, that a "professional debate" exists among psychologists regarding which test, the MMPI-2-RF or MMPI-2, is appropriate. In addition, Dr. Thomas testified regarding why he used the MMPI-2-RF in this case. N.T., 7/28/14, at 83-92.

The trial court weighed Dr. Thomas' conclusions and recommendations in light of Dr. Gordon's critique and found as follows.

> Dr. Peter Thomas conducted a full custody evaluation in this case. We also heard and considered Dr. Gordon's critique thereof. While we agree with Dr. Thomas' overall recommendations and conclusions in this matter, we do find Dr. Gordon's opinion to have merit. We have great respect for both Dr. Thomas and Dr. Gordon. Nevertheless, Dr. Gordon's criticism does not undermine our overall confidence in Dr. Thomas' opinions and recommendations.

Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 17. We discern no abuse of discretion by the trial court to the extent its decision is based on Dr. Thomas' recommendations. Indeed, the record reveals that the trial court carefully considered the testimony of Dr. Thomas in light of the critique of Dr. Gordon, and made credibility and weight of the evidence findings accordingly, which we will not disturb. *See A.V.*, *supra* (stating that we defer to the trial court on issues of credibility and weight of the evidence). Therefore, Mother's first issue fails.

In her second issue, Mother argues that the trial court abused its discretion in assessing her "current parenting skills on the basis of her prior behavior." Mother's Brief at 20. Specifically, Mother argues the trial court based its decision to grant the parties equally shared physical custody of A.B.S. on Mother's past objection to the Children receiving vaccinations, Mother's objection in the year 2011 to the Children being treated by Reading Pediatrics, and Mother fostering in A.B.S. an unreasonable emotional dependency on her. *Id.* at 20-21.

As set forth above in the trial court's consideration of the Section 5328(a) custody factors, the trial court's physical custody decision regarding A.B.S. was based on its conclusion that the child's best interests are served by his continuing enrollment in the Wilson School District and on time away from Mother. The record overwhelmingly supports the trial court's decision in this regard, most notably Dr. Thomas' conclusions and recommendations, and the testimony of Dr. Grisolano. Therefore, we discern no abuse of discretion by the trial court. Thus, Mother's second issue fails.

In her third issue, Mother argues the trial court abused its discretion in disregarding the wishes of A.B.S. to remain with Mother. Mother's Brief at 23. The trial court stated as follows with respect to its consideration of Section 5328(a)(7), *i.e.*, the well-reasoned preference of the child, based on the child's maturity and judgment.

> [A.B.S.] repeatedly told the Court that he does not
> feel comfortable at Father's residence, but he could

articulate no reason for this discomfort other than he prefers to be with Mother. Dr. Thomas finds [A.B.S.]'s dependence on being in [the] presence of Mother unhealthy. Dr. Thomas stated in his report: "Some significant relationship between [A.B.S.] and Father will positively titrate some of the intensity of the relationship between [A.B.S.] and Mother."

Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 20. As such, the trial court considered A.B.S.'s preference but did not find it well-reasoned or in the best interests of the child. We discern no abuse of discretion in this regard. Further, we defer to the trial court's determination regarding the weight placed on A.B.S.'s custody preference. *See A.V.*, *supra*.

In Mother's fourth issue, she argues that the trial court abused its discretion in requiring A.B.S. to continue attending school in the Wilson School District. Mother's Brief at 28. We reject Mother's argument to the extent it is based on challenging the trial court's findings regarding the credibility and weight of the evidence of the report and testimony of Dr. Grisolano and the testimony of Dr. Bomze. *See A.V.*, *supra*.

The trial court explained as follows.

Father consulted Lee Ann Grisolano, Ph.D., a certified school psychologist concerning the issue of whether or not the Wilson School District or the Montessori Country Day School is the more appropriate educational setting for [A.B.S.]. [A.B.S.] has a specific learning disability that affects his performance in reading and writing. Dr. Grisolano testified at trial and her report was admitted in evidence. Dr. Grisolano reviewed [A.B.S.]'s Individualized Education Program ("I.E.P.") and the

curriculums at Montessori Country Day School, the Wilson School District and the Governor Mifflin School District. Dr. Grisolano observed that [A.B.S.] is "making not only academic progress in his current educational setting but also progress toward his social development and increased self-confidence as a student. … It is this consultant's impression that efforts shall be made to minimize [A.B.S.]'s stress … and therefore [I] recommend that he remain at Green Valley Elementary School" (which is the elementary school within the Wilson School District).

On the other hand, Mother presented the testimony of Dr. Jeffrey P. Bomze, who is a pediatrician with experience treating children with learning disabilities. Dr. Bomze opined that Governor Mifflin [School District] employs an excellent remedial program which is well-suited to [A.B.S.]'s special needs. He also said the Montessori Country Day School has a reading specialist on staff that could provide excellent services to [A.B.S.]. He further stated that Montessori's small class size with individualized attention to each student would benefit [A.B.S.].

We have carefully considered the testimony and opinions of both experts and, on balance, find Dr. Grisolano's testimony and opinion more persuasive in light of the compelling reasons set forth in her 11-page report as well as her educational credentials and impressive experience outlined in her CV….

Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 16-17 (citation to record omitted). Upon careful review, we discern no abuse of discretion by the trial court in its decision regarding A.B.S.'s continuing attendance in the Wilson School District.

Finally, we address Mother's fifth and sixth issues wherein she argues that the trial court abused its discretion by awarding Father sole legal custody of the Children and shared physical custody of A.B.S. based on the

- 19 -

testimony and reports of Dr. Thomas. Mother's Brief at 35-41. As discussed at length herein, the trial court found credible and persuasive Dr. Thomas' recommendations regarding the legal custody of the Children and the physical custody of A.B.S. **See** Findings of Fact, Conclusions of Law, Discussion and Final Custody Order, 8/28/14, at 13, 22. Because we have already concluded that the trial court did not abuse its discretion by relying on Dr. Thomas' conclusions and recommendations, we reject Mother's final issues.

Based on the foregoing, we conclude Mother's issues are devoid of merit. Accordingly, we affirm the trial court's August 29, 2014 custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/21/2015